UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ERIC E. HOYLE,

                                    Plaintiff,

                  -vs-                                        08-CV-347C

FREDERICK DIMOND, ROBERT DIMOND,
and MOST HOLY FAMILY MONASTERY,
a New York Not-for-Profit Corporation,

                                    Defendants.

_____

APPEARANCES:              CHAMBERLAIN D'AMANDA OPPENHEIMER &
                          GREENFIELD LLP (K. WADE EATON, ESQ., OF
                          COUNSEL), Rochester, New York, for Plaintiff.

                          RUPP, BAASE, PFALZGRAF, CUNNINGHAM &
                          COPPOLA LLC (LISA A. COPPOLA, ESQ., OF
                          COUNSEL), Buffalo, New York, for Defendants.

## INTRODUCTION

        In this case, plaintiff seeks damages and restitution from defendants, who operate

the not-for-profit Most Holy Family Monastery ("MHFM") in Fillmore, New York.  According

to the complaint, filed May 9, 2008, plaintiff entered the monastery on September 27, 2005

with the intention of becoming a Benedictine monk.  He alleges that he later determined

that MHFM was not a Benedictine monastery, and left on December 31, 2007.  Plaintiff

seeks to recover those monies he donated to MHFM in reliance on their representations

regarding their affiliation with the Order of St. Benedict.  Plaintiff has asserted causes of

action for fraud, negligent misrepresentation, unjust enrichment, and money had and

received (Item 1).

Defendants filed an answer to the complaint on June 9, 2008 (Item 5), and simultaneously filed motions to dismiss (Item 6) and for a preliminary injunction (Item 7). On July 16, 2008, plaintiff filed a motion to amend/correct the complaint (Item 20).  In his proposed amended complaint, plaintiff seeks to add some factual allegations and to assert 10 causes of action – fraud, negligent misrepresentation, unjust enrichment, mandatory accounting, money had and received, violation of 18 U.S.C. §§ 1962(c) and (d), deceptive trade practices, false advertising, and vicarious liability of MHFM.  In an order dated July 23, 2008, the court granted the motion for preliminary injunctive relief and ordered plaintiff to "return to the defendants all confidential and proprietary records taken from [MHFM] in any form" and to remove confidential and proprietary information from any electronic storage devices in his possession (Item 23).  Plaintiff was also instructed to report his compliance with the injunction to the court.

Plaintiff filed a response to the motion to dismiss (Item 26), and defendants filed a response to the motion to amend/correct (Item 25).  Oral argument on both motions was heard on August 18, 2008.

On August 8, 2008, plaintiff filed an affidavit reporting his "efforts and success in complying with" the court's order (Item 30).  Dissatisfied with both plaintiff's efforts and success, defendants filed a motion for contempt (Item 34).  Plaintiff filed a response to the motion (Item 37), and a motion for sanctions pursuant to Fed. R. Civ. P. 11 (Item 40).  For the following reasons, the defendants' motion to dismiss is denied, the plaintiff's motion to amend/correct the complaint is granted, the defendants' motion for contempt is denied, and the plaintiff's motion for Rule 11 sanctions is denied.

**FACTS**

In approximately 2005, plaintiff learned of the MHFM through research on the Internet (Item 1, ¶¶ 15, 16).  He was told by defendant Frederick Dimond, who goes by the name Brother Michael Dimond, OSB, that MHFM dated to the 1960s and that defendant Frederick Dimond was a Benedictine monk who supervised the monastery (*id.* ¶¶ 18-29). In reliance on information provided by defendant Frederick Dimond, on April 4, 2005, plaintiff made a cash contribution to MHFM of $700.00, and on May 12, 2005, he made an additional cash contribution of $65,000.00 (*id.* ¶ 21).  Plaintiff then made several visits to MHFM and decided to become a postulate under the auspices of Brother Michael and MHFM (*id.* ¶¶ 22-23).  Defendant Frederick Dimond advised plaintiff that he would be required to turn over his worldly possessions to MHFM (*id.* ¶ 25).

Plaintiff entered the monastery on September 27, 2005 (Item 1, ¶ 26).   On November 4, 2005, he transferred stock valued at $1.2 million to MHFM (*id.* ¶ 28).  In late spring/summer of 2006, plaintiff executed a document that specified that he was to receive $750,000.00 if he left the monastery (*id.* ¶ 30).  Subsequently, plaintiff learned that Brother Michael was not a member of the Order of Benedict, that MHFM was neither founded nor operated in accordance with the Order of Saint Benedict, and that he could not become a Benedictine monk through his association with MHFM (*id.* ¶¶ 31, 32).  Plaintiff left MHFM on December 31, 2007 (*id.* ¶ 33).  Defendants have refused a demand that all funds previously transferred to the defendants be returned to the plaintiff (*id.* ¶ 34).

3

**DISCUSSION**

**1.  Motion to Dismiss**

Defendants contend that the complaint must be dismissed because this court lacks subject matter jurisdiction.[1]  They base their argument on the First Amendment, applicable to the states by the Fourteenth Amendment, which prohibits the making of "law[s] respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. Constitution, 1st Amendment, 14th Amendment.  Specifically, defendants argue that this dispute cannot be adjudicated without interpreting religious doctrine and that the court would necessarily be forced to define the term "Benedictine," to interpret the specific criteria required of a monastery to be considered Benedictine, and to determine what benefits MHFM could confer on the plaintiff.  Plaintiff disputes that the court will be required to define and interpret religious doctrine and contends that the defendants misrepresented their affiliation with the Order of St. Benedict.  He states that the "only issue to be decided with regard to the fraud claims is whether the defendants are, or are not, affiliated with the universally recognized and sanctioned Order of St. Benedict" (Item 26, p. 3).

Consistent with the First Amendment, courts are forbidden from interfering in or determining religious disputes.  The Constitution directs that religious bodies are to be left free to decide church matters for themselves, uninhibited by state interference.  *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709 (1976); *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94 (1952).  The Constitution limits judicial involvement in

---

[1]  The court notes that federal jurisdiction of this matter is based on diversity of citizenship.  The parties are citizens of different states, and the amount in controversy exceeds $75,000.00.  *See* 28 U.S.C. § 1332(a)(1).

4

disputes raising religious concerns, and courts are prohibited from resolving controversies which require consideration of religious doctrine.  *Avitzur v. Avitzur*, 446 N.E.2d 136, 138 (N.Y.), *cert. denied*,  464 U.S. 817 (1983); *see also Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 449 (1969).  "[C]ivil courts are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical polity on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law."  *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. at 713.

However, "courts are free to decide such disputes if they can do so without resolving underlying controversies over religious doctrine."  *Park Slope Jewish Center v. Congregation B'nai Jacob*, 686 N.E.2d 1330, 1331 (N.Y. 1997).  This "neutral principles of law" approach requires the court to apply objective, well-established principles of secular law to the issues, without reference to any religious principle.  *Avitzur*, 446 N.E.2d at 138.

> The question that we must resolve in the case before us, therefore, is whether the dispute . . . is an ecclesiastical one about "discipline, faith, internal organization, or ecclesiastical rule, custom or law," or whether it is a case in which we should hold religious organizations liable in civil courts for "purely secular disputes between third parties and a particular defendant, albeit a religiously affiliated organization."

*Bell v. Presbyterian Church,* 126 F.3d 328, 331 (4th Cir.1997) (citations omitted).

A plaintiff asserting subject matter jurisdiction has the burden of establishing its existence by a preponderance of the evidence.  *See APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).   When considering a motion to dismiss for lack of subject matter jurisdiction, the court must accept the material factual allegations contained in the complaint.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198

(2d Cir. 1992).  The court may consider evidence beyond the pleadings to resolve disputed issues of fact pertaining to its jurisdiction.  *See Flores v. S. Peru Copper Corp.,* 414 F.3d 233, 255 n.30 (2d Cir. 2003); *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002). However, in this determination, the court should not draw any inferences favorable to plaintiff.  *See Balfour Maclaine*, 968 F.2d at 198 (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)).  "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998).

Accordingly, the court must accept the plaintiff's allegations that the defendants represented themselves as Benedictine monks and MHFM as a Benedictine monastery. The court must also accept the allegation that the defendants are not members of the recognized Order of St. Benedict, and that they convinced plaintiff to turn over his worldly possessions to them on the false promise that he could become a Benedictine monk at MHFM.  Plaintiff states that the only issue to be decided is whether the defendants are affiliated with the universally recognized and sanctioned Order of St. Benedict.  Defendants contend that in order to make this determination, the court will be required to make findings of fact with regard to the Order of St. Benedict in general, the requirements and obligations that must be fulfilled in order for one to become a Benedictine monk and for a monastery to be established, and whether the Dimond brothers are legitimate Benedictine monks and MHFM a legitimate Benedictine monastery.  Contrary to defendants' assertions, defendants' affiliation with the recognized Order of St. Benedict is a neutral factual determination that does not require the interpretation of religious doctrine.  It would seem that defendants would prefer to frame the issue as a dispute between MHFM and the

6

Order of St. Benedict, and whether the defendants can be "Benedictines" without being a associated with the recognized Order.  The court sees the dispute as simply one between plaintiff and the defendants, and whether the defendants falsely represented themselves as being affiliated with the Order of Saint Benedict.  At this time, defendants' motion to dismiss on First Amendment grounds is denied.  However, if, after discovery and a narrowing of the issues, the case later requires an interpretation of religious doctrine, the jurisdictional issue could be decided on a motion for summary judgment.  *See Petruska v. Gannon Univ.,* 462 F.3d 294, 213 (3d Cir. 2006), *cert. denied,* 127 S.Ct. 2098 (2007) (if resolution of claim raised Establishment Clause issues, court could later grant summary judgment on that basis).

Defendants also argue that the third and fourth causes of action, for unjust enrichment and money had and received, are based on a theory of quasi contract and cannot stand where an actual contract has been alleged.  Plaintiff responds that he has not pleaded a breach of contract claim, and the claims are proper.  A review of the complaint indicates that plaintiff has not alleged a breach of contract, although he alleges that he executed a document purporting to entitle plaintiff to the return of $750,000.00 upon his departure from the monastery.  As for the remainder of plaintiff's donations to the monastery, there does not appear to have been any written contractual agreement.

"The essence of unjust enrichment is that one party has received money or a benefit at the expense of another."  *City of Syracuse v. R.A.C. Holding, Inc.*, 685 N.Y.S.2d 381, 382 (App. Div. 1999).  A cause of action for money had and received sounds in quasi contract and "arises when, in the absence of an agreement, one party possesses money that in equity and good conscience it ought not retain."  *Rocks & Jeans, Inc. v. Lakeview*

7

*Auto Sales & Serv., Inc.,* 584 N.Y.S.2d 169, 170 (App. Div. 1992).

> Although an action for money had and received "is recognized as an action in implied contract, the name is something of a misnomer because it is not an action founded on contract at all; it is an obligation which the law creates in the absence of agreement when one party possesses money that in equity and good conscience he [or she] ought not to retain and that belongs to another."

*Matter of Estate of Witbeck*, 666 N.Y.S.2d 315, 317 (App. Div. 1997) (quoting *Parsa v. State*, 474 N.E.2d 235, 237 (N.Y. 1984)).

Although the existence of a valid and enforceable contract governing a particular subject matter generally precludes recovery in quasi contract (*see Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987); *Lum v. New Century Mortgage Corp.*, 800 N.Y.S.2d 408, 410 (App. Div. 2005)), where there is a bona fide dispute as to the existence of a contract or the application of a contract in the dispute in issue, a plaintiff may proceed upon a theory of quasi contract as well as breach of contract, and will not be required to elect his or her remedies. *See Hochman v. LaRea*, 789 N.Y.S.2d 300 (App. Div. 2005); *Zuccarini v. Ziff-Davis Media, Inc.*, 762 N.Y.S.2d 621 (App. Div. 2003). Here, the plaintiff may properly plead unjust enrichment and money had and received as he has not pled a claim for breach of contract. Even if plaintiff had pled a contract claim, the unjust enrichment and money had and received claims could be alternative claims to a breach of contract claim. *See Zuccarini, supra.* Accordingly, the plaintiff's causes of action for unjust enrichment and money had and received are proper, and the defendants' motion to dismiss is denied.

**2.  Motion to Amend/Correct the Complaint**

Plaintiff seeks to amend the complaint to assert claims pursuant to the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 - 1968.  He also

seeks to add causes of action under New York General Business Law §§ 349 and 350,

which prohibit deceptive business practices and false advertising.  Plaintiff also seeks an

accounting as part of his request for equitable relief.   Defendant argues that any

amendment of the complaint would be futile and the motion should be denied because this

court lacks subject matter jurisdiction on First Amendment grounds.  As the court has

determined that the motion to dismiss for lack of subject matter jurisdiction is denied, the

proposed causes of action must be analyzed to determine whether they otherwise would

be subject to dismissal under Fed. R. Civ. P. 12(b)(6).   As alternative grounds for

dismissal, defendants argue that plaintiff's request for a mandatory accounting must fail

because he has an adequate remedy at law, and that certain of his claims under the New

York General Business law are time-barred.   Defendants also argue that the RICO

conspiracy claim is insufficient in that plaintiff alleges only general and conclusory

allegations of a conspiracy.

Plaintiff's General Business Law claims are subject to a three-year statute of

limitations. N.Y.C.P.L.R. 214(2).  Two of plaintiff's donations, $700.00 on April 1, 2005 and

$65,000.00 on May 2, 2005, occurred more than three years prior to the filing of his

complaint and are time-barred.[2]  However, plaintiff's stock transfers, which constitute the

---

[2]  The dates of these donations appear to have been corrected in the proposed amended
complaint, yet nonetheless fall outside the three-year limitations period.  *See* Item 20, Exh . A, ¶¶ 34-35.

bulk of the donations, took place in November 2005 and September 2006.[3]  Those claims are timely under the New York General Business Law.  To the extent that plaintiff's transfers to MHFM occurred within three years of the filing of the original complaint, amendment to include only these claims is proper.

Defendants further argue that plaintiff has failed to sufficiently allege the elements of a claim for a mandatory accounting.  A party seeking a mandatory accounting must first establish four conditions: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal."  *Pressman v. Estate of Steinvorth,* 860 F. Supp. 171, 179 (S.D.N.Y. 1994) (quoting *300 Broadway Realty Corp. v. Kommit*, 235 N.Y.S.2d 205, 206 (Sup.Ct. 1962)). Defendants contend that as plaintiff has an adequate remedy at law, his claim for an accounting must fail.

"The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest."  *Palazzo v. Palazzo*, 503 N.Y.S.2d 381, 384 (App. Div. 1986).  Upon a showing that plaintiff entrusted property to a fiduciary, the fiduciary is bound to reveal his dealings with that property.  *See Bouley v. Bouley*, 797 N.Y.S.2d 221, 223 (App. Div. 2005).  In his proposed amended complaint, plaintiff has alleged a fiduciary relationship between him and the defendants and a transfer of funds based on defendants' false assertions that they were Benedictine monks and

---

[3]  Plaintiff has added an allegation of an additional stock transfer in the proposed amended complaint.  *See* Item 20, Exh. A., ¶ 46.

MHFM was a Benedictine monastery.  Plaintiff seeks a "full and accurate accounting of all sums transferred to the defendants between September 1, 2005 and the present" (Item 20, Exh. A, ¶ 78).  Despite the existence of a legal remedy, New York law does not preclude the plaintiff from seeking a mandatory accounting.  *See In re State Street Assoc., L.P.*, 323 B.R. 544, 561 (Bankr. N.D.N.Y. 2005); *Darlagiannis v. Darlagiannis*, 369 N.Y.S.2d 475, 476 (App. Div. 1975) (even though party may have legal remedy, he is not precluded from seeking equitable relief by way of an accounting).  Accordingly, at this stage of the litigation, the court will allow the amendment seeking a mandatory accounting.

Defendants also argue that plaintiff has failed adequately to assert a RICO conspiracy claim, as he has set forth only general and conclusory allegations of a conspiracy.  In the proposed amended complaint, plaintiff alleges the violation of 18 U.S.C. § 1962(c), which makes it unlawful to conduct or participate, directly or indirectly, in the affairs of a RICO enterprise, and section 1962(d), which makes it unlawful to conspire to violate any of the subsections of the RICO statute.  "A 'RICO conspiracy requires evidence that [a defendant] participated in the enterprise through a pattern of racketeering activity, or agreed to do so.'"  *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002) (quoting *United States v. Tellier*, 83 F.3d 578, 581 (2d Cir.), *cert. denied,* 519 U.S. 955 (1996)); *accord United States Fire Ins. Co. v. United Limousine Serv., Inc.,* 303 F. Supp. 2d 432, 453 (S.D.N.Y. 2004) ("In order to allege a conspiracy under § 1962(d), the plaintiff must assert that each defendant by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise") (internal quotation marks omitted).  In order to state a claim under section 1962(d), the complaint "'should state with specificity what the agreement was, who

entered into the agreement, when the agreement commenced, and what actions were taken in furtherance of it.'" *FD Prop. Holding*, 206 F. Supp. 2d at 373 (quoting 1 Arthur F. Mathews, et al., Civil Rico Litigation § 9.07 (2d ed.1992)).   Conclusory allegations concerning the conspiracy are insufficient. *United States Fire Ins. v. United Limousine Serv.*, 303 F. Supp. 2d at 453-54.   In the analogous antitrust context, the Supreme Court recently held that stating a conspiracy claim "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made . . . . [I]t simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

Considering the allegations of the proposed amended complaint, the court concludes that plaintiff has sufficiently alleged a RICO conspiracy.  In the conspiracy claim, plaintiff adopts the allegations of the subsection (c) RICO claim which include more than simply general and conclusory allegations of mail, bank, and wire fraud.  Plaintiff has alleged in specific detail the acts of the defendants in making false representations to the general public through the MHFM website, the sale and distribution of publications and other media and the solicitation of donations while representing themselves as members of the Order of St. Benedict, and the invitation to individuals such as plaintiff to join the MHFM and donate their personal property, based on the representation that MHFM is a Benedictine community.   Item 20, Exh. A, ¶¶ 86-88.   The plaintiff alleges that the defendants have been engaged in this conduct since the summer of 2002 or before, and that the conduct continues to the present day.   *Id.,* ¶ 90.   Accordingly, the proposed amended complaint sufficiently alleges an agreement between the defendants to commit

at least two predicate acts.  *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990) ("the [c]omplaint must allege some factual basis for a finding of a conscious agreement among the defendants.").

Finally, defendants argue that plaintiff's motion to amend the complaint should be denied because of undue delay.   Plaintiff states that he added the RICO claims in response to the June 2008 Supreme Court case, *Bridge v. Phoenix Bond & Indem. Co.,* 128 S. Ct. 2131 (June 9, 2008), yet defendants correctly argue that the law in the Second Circuit has been consistent with that case for years.  *See Ideal Steel Supply Corp. v. Anza,* 373 F.3d 251, 263 (2d Cir. 2004) (direct victim may recover under RICO whether or not he is the direct recipient of the false statements).   Defendants also argue that plaintiff has provided no compelling reason for seeking to add the other causes of action.

In order to deny a motion to amend on the ground of delay, the delay must be accompanied by either bad faith or undue prejudice.  *See Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993).  Here, the court concludes that plaintiff is not guilty of undue delay.  The complaint was filed in May 2008, and the motion to amend was filed in July 2008.   There has been no discovery, and the proposed amendment would not result in prejudice to defendants as it is predicated on the same factual allegations as the original complaint.   Accordingly, plaintiff's motion to amend the complaint is granted, consistent with this decision.

## 3.  Motion for Contempt

Defendants seek to hold plaintiff in contempt of the court's order of July 23, 2008 (Item 23).  In that order, granting defendants' motion for a preliminary injunction, plaintiff

13

was instructed to "return to the defendants all confidential and proprietary records taken from Most Holy Family Monastery ('MHFM') in any form."  Additionally, the order required plaintiff to provide the defendants "copies of all data contained on any computer or digital storage device within his possession or control which constitutes confidential and proprietary records of MHFM."  Plaintiff was also instructed to "remove any confidential and proprietary information taken from MHFM (including copies thereof) from any electronic storage device, including but not limited to hard drives, jump drives, and flash drives, by permanently deleting and wiping clean such electronic storage devices such that plaintiff no longer has access to it or an ability to recreate such information . . . ."

In an affidavit filed August 8, 2008, plaintiff reported his compliance with the court's order (Item 30).  He stated that he provided his attorney for return to the defendants "all confidential and proprietary documents" of MHFM which remained in his possession and destroyed or securely erased his electronic storage devices that contained such information.  Those documents he delivered to his attorney included emails between plaintiff and the defendants "concerning MHFM business, confidential, or proprietary matters;" emails between plaintiff and MHFM customers, supporters, or inquirers whom plaintiff did not know before he entered MHFM, if sent during his residency at MHFM; and emails between plaintiff and MHFM customers, supporters, or inquirers whom he knew before entering the monastery, if sent during his residency at MHFM and related to MHFM business (Item 30, ¶ 3).  Plaintiff also delivered other MHFM confidential and proprietary material, including translations of MHFM publications and copies of pre-publication MHFM videos (Item 30, ¶ 4).  Plaintiff then deleted or destroyed files "containing organized contact information for MHFM-related persons assembled by [plaintiff] after departing MHFM."

14

(Item 30, ¶ 5.)  Plaintiff stated that he did not deliver these records to defendants as he did not consider them to be MHFM records.  Plaintiff stated that "[t]he vast majority of this information was not assembled from MHFM records, but from my own memory and public records.  The portion that arguably came from MHFM records was email addresses formerly in my electronic address book.  Most of these addresses should appear in Paypal emails now entered as evidence in this case."  *Id*.

Defendants contend that plaintiff violated the court's order by failing to return to the defendants donor contact information that he apparently took with him when he left MHFM. Specifically, they argue that plaintiff took MHFM contact information and assembled it into his own contact list.  Defendants contend that as plaintiff organized his own contact list from MHFM records, the list itself is MHFM's proprietary information.  It is not enough that plaintiff destroyed this information by erasing it from his electronic databases.  Defendants contend that the information should have first been returned to them as proprietary and confidential records.

"A party may be held in civil contempt only where a plaintiff establishes (1) the [court's] decree was clear and unambiguous, and (2) the proof of non-compliance is clear and convincing.  Although the defendant's conduct need not be willful, a plaintiff must also prove that (3) the defendant has not been reasonably diligent and energetic in attempting to comply."  *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 291 (2d Cir. 2008); *accord City of New York v. Local 28, Sheet Metal Workers' Int'l. Assoc.*, 170 F.3d 279, 282-83 (2d Cir. 1999).  In evaluating the purported contemnor's conduct, "[t]he court is not empowered to command, any more than it can pretend for itself to achieve, performance approximating perfection.  The court is obliged, however, to require substantial performance and due

diligence." *Aspira of New York, Inc. v. Bd. of Educ.,* 423 F. Supp. 647, 651 (S.D.N.Y. 1976); *see also Dunn v. N.Y.S. Dept. of Labor*, 47 F.3d 485, 490 (2d Cir. 1995) ("The failure to meet the strict requirements of an order does not necessarily subject a party to a holding of contempt . . . ."). It is well settled that "[t]he Court's power to hold a defendant in contempt is a 'potent weapon' that should not be exercised 'where there is fair ground of doubt as to the wrongfulness of the defendant's conduct.'" *Latino Officers Ass'n of New York v. City of New York*, 519 F. Supp. 2d 438, 443-44 (S.D.N.Y. 2007) (quoting *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967) and *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)).

Defendants' motion is based on their position that plaintiff was to have returned to them all donor contact information, as that information constitutes "confidential and proprietary records of MHFM" (Item 23).  In his affidavit, plaintiff stated that he did not consider this information to be "confidential and proprietary records," and so did not provide the information to defendants, but rather deleted the contact information from his computer as he was instructed to "remove any confidential and proprietary information taken from MHFM (including copies thereof) from any electronic storage device . . . ."  Given the benefit of hindsight, the language of the preliminary injunction order, which was essentially drafted by defendants (*see* Items 7, 18), could have been more precise.  If defendants sought the return of all donor contact information in plaintiff's possession, they could have included specific language to that effect in their proposed orders.  While the order arguably could be read as requiring the return of the contact information prior to its destruction, the plaintiff's position, that the information does not constitute "records," is plausible.  In any

event, the information has been destroyed, and cannot be retrieved and provided to the defendants.  If the purpose of the preliminary injunction was to prevent plaintiff from contacting MHFM donors, that purpose has been satisfied by plaintiff's substantial compliance with the court's order.  Plaintiff no longer has access to the MHFM donor contact information.  Moreover, the court is confident that defendants have access to their own donor contact information.  As the court has determined that plaintiff has substantially complied with the court's order, the defendants' motion for contempt is denied.

### 4.  Motion for Sanctions

Finally, plaintiff has filed a motion for sanctions pursuant to Fed. R. Civ. P. 11, arguing that the defendants' motion for contempt was frivolous.  Sanctions may be imposed pursuant to Rule 11  "if a party submits a pleading or motion 'for any improper purpose.'"  *Messer v. Fahnestock & Co.*, 2008 WL 4934608, at *19 (E.D.N.Y. November 18, 2008)  (quoting *Kropelnicki v. Siegel,* 290 F.3d 118, 131 (2d Cir. 2002)).  Rule 11 sanctions are an extraordinary remedy, and a movant must therefore meet a "high bar" before sanctions are imposed on an adversary.  *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 178-79 (S.D.N.Y. 2008).  By its express terms, Rule 11 is limited to representations made in pleadings, motions, or other papers. Fed. R. Civ. P. 11(b).  In addition, a Rule 11 motion must be made separately from any other motion, must be served before it is filed with the court, and may not be filed or pursued before the court if the adversary withdraws the challenged contention underlying the motion within three weeks of service. Fed. R. Civ. P. 11(c)(2).  It is not apparent from the motion papers that plaintiff has complied with Rule 11, which requires that the movant give the opposing party 21 days within which to

17

withdraw the offending pleading.  Additionally, defendants' motion for contempt was based on a plausible argument that plaintiff failed to comply with the court's order.  Accordingly, the court finds that the motion for contempt was not frivolous, and the motion for sanctions is therefore denied.

## CONCLUSION

The defendants' motion to dismiss (Item 6)is denied.  Plaintiff's motion to amend the complaint (Item 20) is granted.  The defendant's motion for contempt (Item 34) and the plaintiff's motion for Rule 11 sanctions (Item 40) are both denied.  Plaintiff shall file the amended complaint, in accordance with this order, on or before March 27, 2009, and defense counsel shall then answer accordingly.  Thereafter, the court will conduct a telephone conference with counsel on May 11, 2009 at 11:15 a.m. to set a further schedule.  The court will initiate the call.

So ordered.

    \s\ John T. Curtin
    JOHN T. CURTIN
    United States District Judge

Dated: March 5      , 2009
p:\opinions\08-347.jan1509